John McCafferty v. Sarah A. Heritage.

In an action under the statute against a married woman for goods sold and delivered to her while living separate from her husband and not supported by him, an allegation to that effect made by her in her petition filed in court against her husband for a divorce constitutes an admission on her part that may be given in evidence against her to prove that fact on the trial of the case.

The action being on a promissory note purporting to be made and signed by her, but denied by her, her signature to her affidavit of defense filed in the action, being admitted to be genuine, was offered and admitted in evidence in order that the jury might compare the two signatures and determine whether that to the note was or was not genuine also.

Any cohabitation between the husband and wife after the goods have been sold and delivered to her will defeat the action under the statute, and if her promissory note be afterward taken for the price of them it will defeat the action on that also.

Assumpsit on a promissory note for two hundred dollars at six months, dated September 27th, 1872, to the order of the plaintiff by the defendant, who was represented by the counsel for the plaintiff to have been at the date of it a married woman but living separate and apart from her husband, John H. Heritage, and not supported by him. He referred to the statute, *Rev. Code, chap.* 83, *pp.* 478, 479, which provides that money or other property held or acquired by a married woman living separate from and not supported by her husband, and which has been kept separate from and can be distinguished from the money or property of the husband, shall not be deemed his property or taken for his debts so long as they shall live separate and he shall fail to support her in whole or in part; but such property may be taken for debts and liabilities contracted or incurred by such married woman while so living apart from her husband and for the recovery thereof she may, while her separation continues, be sued as a single woman and may sue in her own name and for her own use for debts contracted and liabilities incurred to her. For her indebtedness and liabilities contracted or incurred while living separate from him without his default he shall not be liable, otherwise he shall be responsible for them to the same extent that he is now responsible by

law. In case they again cohabit he shall be responsible for all her debts and liabilities contracted or incurred during such separation.

*Bradford*, for the plaintiff, then offered in evidence the petition of the defendant in this court at the May term, 1876, for a divorce from her husband containing her allegation that she was then living apart from her husband and was not supported by him to prove the fact in this case, and cited in support of its competency as evidence for that purpose 1 *Greenl. Ev.* 171, *note* 1 and *sec.* 195.

*Patterson*, for the defendant, objected to the admissibility of it.

*The Court* admitted it.

The plaintiff then produced his book of original entries and his account of goods sold and delivered to the defendant from September, 1871, to January, 1872, for which the promissory note had been given.

James M. Watson was then sworn as a witness and proved the signature of the defendant to the note, after comparing it with her signature to her affidavit of defense filed in this cause and taken before him as a justice of the peace.

The counsel for the plaintiff then offered in evidence the affidavit of defense itself, in order that the jury might compare the defendant's signature to it with her signature to the note, the former being admitted to be genuine, and determine from the comparison whether the latter was genuine or forged. 1 *Greenl. Ev.*, *sec.* 581.

The counsel for the defendant objected to the admissibility of it for that purpose, because the generality of men and of juries were well known to be incompetent to decide such a question by such a criterion. Even the best of experts were often incompetent to detect the difference by such a method between a genuine and forged signature.

*Houston, J.*, suggested that the court had instructed the jury in the case of *Welch* v. *Coulborn*, 3 *Houst.* 647, that they

might for such a purpose institute a comparison between the signature to a receipt alleged to be forged and the signature to sundry other receipts admitted to be genuine already in evidence before them in the case.

*The Court* admitted it in evidence.

*Patterson* moved a nonsuit, when the plaintiff rested his case, on the ground that it appeared by the book of original entries produced in evidence by the plaintiff that all the items of charge contained in his account, and which constituted the consideration for which the note was afterward taken by him, if it was genuine, had been for the sale of intoxicating liquors exclusively; but no proof whatever had been made in this case that the plaintiff had a license to sell such liquor during the time he was selling it to her. He cited *Del. Laws*, 11 *vol.* 273, 455, 495; 12 *vol.* 167; 1 *Kent's Com.* 466.

*Bradford*, in reply, cited 1 *Greenl. Ev.*, secs. 78, 79, 80.

*The Court* were equally divided on the motion, *Comegys, C. J.*, favoring it, and *Houston, J.*, dissenting; *Wootten, J.*, absent. The motion for a nonsuit consequently failed.

The counsel for the defendant then proceeded to call and examine two or three witnesses, one of whom testified that he went there to board, that is, to a hotel in Wilmington at one time kept by the defendant and her husband, in March, 1871, and his wife left when he came back in the fall of that year or the next, but they lived together a little while after he came. Another testified that she went there on the 9th day of January, 1872, and that the defendant and her husband were then living there together and keeping the hotel, but she left him that day and went to Philadelphia, and he remained there, keeping the hotel until the 25th of March following. The third witness, a daughter of theirs, corroborated the testimony of the preceding witnesses, that her mother left the hotel and went to Philadelphia on the 9th day of January, 1872.

*Patterson,* for the defendant, asked the court to charge the jury on the evidence that if they were satisfied that there was any cohabitation between the defendant and her husband after their separation when he came back to his home at his hotel where she was then living in the fall of 1871, or if there was any cohabitation by them there between the 1st of September in that year and the 1st of January, 1872, during which time the liquor bill was contracted, or that there was any cohabitation between them there after the day last mentioned, no action could be maintained against the defendant by the plaintiff, either on the promissory note or on the original cause of action under the statute even, and consequently their verdict should be for the defendant.    And also that the plaintiff having failed to prove, and there being no evidence in the case, that he had a license under the general statutes before referred to to sell intoxicating liquor, he could not recover in the action.    *Wheeler* v. *Russell,* 17 *Mass.* 257 ; *Springfield Bank* v. *Merrick et al.,* 14 *Mass.* 321 ; *Bailey* v. *McDowell,* 1 *Harr.* 346.

*Bradford,* for the plaintiff, assented to his first proposition if the evidence would warrant it, and provided their brief abiding together under the same roof could be properly considered a cohabitation within the meaning and policy of the statute. Would a dwelling together for a day or a month or so in the course of a year, followed at the end of it by a separation of equal or longer duration, serve to exempt the wife from her liabilities under the statute in such a case as that?    If so, it would be but a delusion and a snare who credited her even with the necessaries of life in one of her separations from her husband.

*The Court* charged the jury in conformity with the prayer of the defendant, provided they were satisfied from the evidence that there had been any cohabitation between her and her husband after the goods had been sold and delivered, for such was the express language of the statute, which was a special and peculiar one in its objects and policy, and applicable only to married women living in a state of separation from their hus-

bands, and the taking of her promissory note afterward for the same could not in that case entitle him to recover in the action, as it would be against the manifest design and object of the statute. They would, therefore, if such should be their conclusion on the evidence, return a verdict for the defendant. But if, on the contrary, they should be satisfied from the evidence that she was living in a state of separation from her husband during the time the liquors were sold and delivered to her, which was from September 1st, 1871, to January 1st, 1872, and had no cohabitation with him after that time, their verdict should be for the plaintiff, and they should assess his damages at two hundred dollars, with interest from six months after the date of the promissory note.